**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN L. CRAYTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:     2:07cv1111-TFM** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **AGRICULTURE & INDUSTRIES** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER RE: CONSOLIDATION**</u>

**COMES NOW,** the defendant, Alabama Department of Agriculture & Industries, and submits the following response to this Court's Order to Show Cause as to why this case should not be consolidated with *Crayton v. Alabama Department of Agriculture & Industries*, 2:07CV626-MEF, both currently pending in the United States District Court for the Middle District of Alabama Northern Division.   Defendant asserts that these two cases should be consolidated and would show as follows:

1.      Plaintiff, John Crayton, filed *Crayton v. Alabama Department of Agriculture & Industries*, 2:07CV626-MEF on or about July 9, 2007, claiming race discrimination, and retaliation in violation of Title VII.  (Ex. 1 - 2:07CV626-MEF Complaint).   That matter is currently pending before Judge Fuller.

2.      In that action, on December 21, 2007, the plaintiff filed a Motion for Leave to Amend the Complaint on the basis that he had discovered certain allegations in his Complaint were not ripe.  (Ex. 2 - 2:07CV626-MEF Doc.10).   The plaintiff attached his proposed Amended Complaint to his Motion to Amend.   (Ex. 3 - 2:07CV626-MEF Doc.10-2).   The proposed amended complaint omitted plaintiff's claim of retaliation and alleged facts related thereto.   (<u>Id.</u>).

On January 3, 2008, the Court granted plaintiff's Motion for Leave to Amend the Complaint. (Ex. 4 - 2:07CV626-MEF Doc.11). The plaintiff filed his Amended Complaint on March 17, 2008. (Ex. 5 - 2:07CV626-MEF Doc. 13).

3.      On December 21, 2007, plaintiff filed the current action against the defendant, Alabama Department of Agriculture & Industries. (Doc.1). In this second Complaint, the plaintiff brings a claim for retaliation pursuant to Title VII, the same claim omitted from Plaintiff's Amended Complaint in the previously filed action pending before Judge Fuller. (Doc. 1). The factual and legal allegations contained in the plaintiff's Complaint in the current action are those which were contained in the original Complaint submitted in the previously filed action pending before Judge Fuller (2:07CV626-MEF), namely retaliation based on alleged actions taken by the defendant after the plaintiff submitted a second charge of discrimination with the Equal Employment Opportunity Commission. (Id.) Thus, the allegations contained within the plaintiff's original Complaint in the first action pending before Judge Fuller relating to retaliation are alleged in a separate action in this Court in this, his second lawsuit.

4.      The facts related to the plaintiff's claim for retaliation in the current lawsuit flow from alleged acts related to his race discrimination claim contained in the previously filed lawsuit. The allegations in both lawsuits arise from the same common nucleus of operative fact. The retaliation claim brought in this lawsuit is contained in the original complaint submitted in the previously filed action, but omitted by the plaintiff in his Amended Complaint (Ex. 3 - 2:07CV626-MEF Doc. 13). Further, the same parties and attorneys are involved in each lawsuit. Thus, judicial economy would be promoted by consolidation of these two cases.

5.      Rule 42 of the Federal Rules of Civil Procedure provides that: "when actions involving a common question of law or fact are pending before the Court, it may order a joint

hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  The claims in both of the plaintiff's cases pending in the Middle District of Alabama, Northern Division arise out of common questions of law and fact. Therefore, in order to avoid unnecessary cost and delay, these two cases should be consolidated.

Therefore, the defendant respectfully requests this Court, pursuant to Rule 42 of the Federal Rules of Civil Procedure, consolidate the current action with the matter pending before Judge Fuller (2:07CV626-MEF) in order to avoid unnecessary costs or delay.


            /s/      Emily C. Marks
EMILY C. MARKS

            /s/      E. Hamilton Wilson, Jr.
E. HAMILTON WILSON, JR.
Attorneys for the Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Juraldine Battle-Hodge
207 Montgomery St., Ste. 215
Montgomery, AL  36104-3528

/s/ Emily C. Marks
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2007 JUL -9  A 10: 33

RECEIVED

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JOHN L. CRAYTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:07CV626-MEF |
| | ) |
| ALABAMA DEPARTMENT OF | ) JURY DEMAND |
| AGRICULTURE & INDUSTRIES, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** John L. Crayton (Plaintiff), and for his complaint against
Alabama Department of Agriculture & Industries and its agents and
representatives (Defendant) hereby complains as set forth herein below.

### JURISDICTION

1.    This Court has jurisdiction over the litigation herein pursuant to 28
      U.S.C. Sections 1331 and 1343, 42 U.S.C., Section 2000e and
      Retaliation.

2.    Plaintiff has fulfilled all conditions precedent to the institution of this
      action.

### VENUE

3.    Defendant is located and/or doing business within this judicial
      district (Middle District and the Northern Division of Alabama).  This
      action is brought within the judicial district wherein the unlawful
      employment practices were committed, making venue proper under

1

42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b) and Retaliation.

## PARTIES

4.    Plaintiff John L. Crayton, hereinafter referred to as "Plaintiff," is an African-American male resident of the United States, residing in Montgomery County, Alabama. Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto. Plaintiff is a member of the protected class for race within the meaning of Title VII. Plaintiff is also an employee of Defendant within the meaning of Title VII.

5.    Defendant, Alabama Department of Agriculture & Industries, hereinafter referred to as "Department" is a state agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## NATURE OF THE CASE

6.    This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant. Plaintiff has been adversely affected by discrimination involving promotion, compensation, assignments, retaliation and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race. The

2

practices committed and continuing to be committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

## **FACTUAL BACKGROUND**

7.     Plaintiff first began working for Defendant on or about May 19, 1976.

8.     From January 2002 to July 2006, Plaintiff was constantly harassed and discriminated in every aspect of his duties as Seed Program Director by Ronnie Murphy, Lance Hester, Doug Rigney and Ron Sparks.

9.     As the State Seed Program Director Plaintiff's job was to enforce the Truth in Labeling Law as it relates to the seed industry.

10.    Plaintiff's regulatory and administrative duties were gradually being taken away and given to Agriculture Compliance in violation of State codes.

11.    On or about April 2002, Ronnie Murphy met briefly with Plaintiff and the laboratory staff to inquire about the backlog of samples and why it was taking so long getting the test results to the clients.   Mr. Murphy was informed that these problems were occurring, because of severe staff shortage due to attrition, and every request to hire needed staff being denied.

12.    On or about May 2002, the three Seed Analyst and Plaintiff volunteered to work two to three hours after regular work hours to

3

catch up the backlog of samples, which took five months to accomplish. Plaintiff was not recognized for the tremendous and unselfish sacrifice.

13.    On or about September 2002, Ronnie Murphy asked Donny Walker to query the Seed Program data base to further scrutinize Plaintiff's work, looking for faults and criticisms.  Not only did the staff and Plaintiff keep up with the workload, the query revealed that they had established a record turn around time on the test results.

14.    On or about April 30, 2003, Plaintiff applied for the position of Division Director, and was ranked number 4 out of 8. The two individuals ranked 2 and 3 did not have a master's degree, which Plaintiff did, or the years of experience that Plaintiff had.   The position was awarded to Lester Hester.   Mr. Hester was less qualified than Plaintiff.  Plaintiff was discriminated against when he was denied this promotion based on his race.

15.    On or about October 4, 2004, Plaintiff was summoned to the commissioner's office at about 3:45 p.m. Upon arrival, the secretary requested that Plaintiff have a seat because, Mr. Sparks wasn't ready to see him. After a fifteen to twenty minute wait, Plaintiff was finally ushered into the commissioner's office. Unaware of the purpose or reason for being summoned, Plaintiff was a bit startled as he entered the office and saw several people sitting around a conference table. In attendance were Ron Sparks, Doug Rigney,

Ronnie Murphy, Lance Hester, David Hooks, B.J. Russell and Dana Wallace. Mr. Sparks asked Plaintiff to take a seat and the commissioner informed Plaintiff that he was summoned to his office for the purpose of issuing him a letter of reprimand for failing to perform his job properly.

16.    Plaintiff was asked if he had anything to say in his defense. As one can imagine, after having been blind sided in such an underhanded way, Plaintiff was at a lost for words. Plaintiff informed him that the work was being done in as orderly and timely manner as possible under the circumstances.   Plaintiff was being harassed by Mr. Sparks.

17.    On or about October 7, 2004, Mr. Sparks sent a letter to Alabama Seed Industry and to Plaintiff's counterparts, both state and federal, informing them that he was taking over the day to day operations of Alabama's program and that any communication with the seed laboratory was to be directed explicitly to him, Doug Rigney, or Lance Hester.   This was another step in usurping Plaintiff's responsibilities and authority.

18.    In or around April 2005, the Governor sent out a mandate that all unnecessary vehicles were to be taken from employees.   The Defendant removed vehicles from its program directors and other management employees.   The vehicles were eventually redistributed.   However, Plaintiff and no other blacks were given

their cars back.    However, after persistent requests, George
Parrish, black employee, was eventually given his vehicle back.
Some of the similarly situated whites were Benny Hitch and Lance
Hester.  Plaintiff was discriminated against based on his race.

19.    During June of 2006, Plaintiff complained to the Alabama State
Employees Association (A.S.E.A.) that he, as well as other Blacks
was being subjected to unlawful employment discrimination
because of their race due to disparate treatment with cars,
promotions and other matters.

20.    Immediately after the Plaintiff complained to the A.S.E.A., the
Defendant began retaliating against Plaintiff.

21.    On or about June 29, 2006, Plaintiff returned from lunch and parked
on the north side of the building next to the coliseum parking lot. As
Plaintiff walked across the parking lot toward the covered walkway,
Plaintiff noticed Jimmy Holley getting out of the passenger side of
the Commissioner's vehicle. As Plaintiff approached the vehicle,
Plaintiff noticed Mr. Sparks getting out of the driver's side. (This
parking space is next to and to the right of the entrance to the
covered walkway.) As Plaintiff walked pass the two gentlemen
(within two feet) Plaintiff spoke, "How are you all doing? " They did
not respond. Plaintiff proceeded toward the building. Approximately
four to five paces beyond them, Plaintiff heard Mr. Sparks yell, but
the voice tone and quality was not that of a salutation. As Plaintiff

continued up the walkway, Mr. Sparks said, "John, I said hi." Plaintiff stopped, turned around to face them as they were walking toward him. Plaintiff replied, "I spoke to you all, did you not hear me speak to you?" By that time Mr. Holley and Mr. Sparks had caught up to Plaintiff on the walkway. Mr. Sparks in a loud voice yelled, "I was just trying to be nice to you, I don't understand why you are so rude and hateful toward me." Plaintiff's reply to him was, "commissioner, I spoke to you and you spoke to me, so let's just let it be at that."

22.     At that point, Plaintiff was still a step or two ahead of the two of them, and near the door to the lobby of the auditorium. As Plaintiff opened the door and stepped inside, Mr. Sparks made a remark that Plaintiff viewed as sarcastic, derogatory and harassing, "You people or you all," Plaintiff turned to look Mr. Sparks in the face; to indicate that he was aware of the derogatory nature of his remark and that it was not appreciated. Mr. Sparks and Plaintiff were face to face at this point. As Mr. Sparks stepped in side the door he made the statement "John are you threatening me? I'll have your ass arrested." Plaintiff's reply was, "Commissioner, do what you have to do." Plaintiff then turned around and proceeded up a set of steps to a card activated security door to avoid any further confrontation with the two of them.

23.  As Plaintiff gained access to the secured area, Mr. Sparks yelled, "John, I want to see you in my office in 10 minutes!" Mr. Sparks immediately changed that from 10 minutes to "right now!" Plaintiff's reply was that he needed to go to his office to contact his A.S.E.A. representative. Mr. Sparks repeated his last statement and Plaintiff complied with his demand.

24.  Plaintiff followed Mr. Sparks and Mr. Holley into Mr. Sparks' office and sat in a chair in front of Mr. Sparks' desk. Plaintiff summoned Jeff Webb, an attorney for the department, to his office. Mr. Webb came in and took a seat next to Plaintiff. Mr. Sparks proceeded to tell Mr. Webb his version of the incident that had just taken place between he and Plaintiff. Without hearing Plaintiff's view, Mr. Webb's comment was "we can't have that in the workplace." Plaintiff was dismissed and Plaintiff went to his office and called the A.S.E.A. office and gave his version of the incident to Mr. Norbert Williams, attorney for A.S.E.A. Plaintiff was constantly being harassed by Mr. Sparks.

25.  On or about July 2006, Plaintiff was reassigned from his position of seed director to a recently created position of Genetically Modified Plant and Products Director.

26.  On or about July 31, 2006, at around 9:45 a.m., Ray Hilburn (Plaintiff's supervisor) came to Plaintiff's office and informed Plaintiff that he, Ronnie Murphy and Doug Rigney wanted to meet

8

with him in the upstairs board room at 10:30 a.m. Plaintiff arrived for the meeting at 10:25. No one was in the room. Around 10:40, Mr. Murphy came in for a few minutes and left. Around 10:50, Mr. Murphy returned to the room followed by Mr. Hilburn five minutes later. Mr. Murphy informed the group that Mr. Rigney would not be attending the meeting.

27.    Mr. Murphy informed Plaintiff as to why he was summoned to this meeting. Mr. Hilburn gave Plaintiff a letter. The letter stated that Plaintiff's duties and immediate supervisor were being changed. It should be noted that this letter was not signed. Plaintiff was also given a Form 40 to sign. Plaintiff felt that he was being targeted for disparate treatment and continued discrimination and harassment because of his participation in statutorily protected activity.

28.    Plaintiff expressed his lack of interest in this newly created position. Plaintiff had grave reservations and misgivings regarding this position. Defendant claimed that the state so badly needed this position, yet didn't see the need to publicly announce the job so as to have a larger selection of applicants to choose from. Additionally, there were other concerns.  Plaintiff was especially concerned with the continual attempts by this administration to harass him, force him in a position to fail, leave or to retire.  Plaintiff felt threatened that if he did not take this position he would be fired.

29.    After voicing his position and concerns, Mr. Murphy attempted to convince Plaintiff of the importance of this program. Mr. Murphy further stated that Plaintiff was the only person in the Department qualified to handle these duties. Mr. Murphy further stated that the change in duties would be a lateral transfer without an increase in salary. Plaintiff's response to this was that if this program is so important, why wasn't announced so that other qualified applicants could apply. Normally statewide jobs are competitive.  The transfer was actually a constructive demotion in retaliation for Plaintiff participating in statutorily protected activity.

30.    At approximately 4:25 p.m., on this same day, Mr. Murphy came to Plaintiff's office. Plaintiff was on the phone, Mr. Murphy left and returned about fifteen minutes later. Plaintiff was still busy with phone calls. At 4:55 Plaintiff was finally finished with his phone calls when Mr. Murphy came back to Plaintiff's office to tell him that the Commissioner wanted to see Mr. Murphy and Plaintiff in his office. Plaintiff informed Mr. Murphy that he had a 5:15 appointment.

31.    Plaintiff left and returned with Mr. Sparks about five minutes later. Mr. Sparks informed Plaintiff that he wanted to talk with him about this very important program that was so badly needed in Alabama. He stated that Monsanto and Syngena thinks that there is a great need for such a program. Plaintiff repeated his concerns, reservations and lack of interest in the new position.

32. Plaintiff further stated that his counterparts (State Seed Control Officials) in other states have "Genetic Engineering" as it relates to the seed industry as part of their regular duties. Plaintiff stated that he would gladly accept the added responsibilities as they relate to seed only, but he wanted to keep his position as State Seed Program Director. Mr. Sparks denied Plaintiff's request.

33. Mr. Sparks said among other things that he desired that Plaintiff take the job, if not "We will have to part company." Once again, Plaintiff was being harassed, threatened and retaliated against.

34. On or about August 1, 2006, at about 11:45, Mr. Murphy came to Plaintiff's office and informed him that Plaintiff was to cease and desist all of his activities and duties as the State Seed Program Director immediately and vacate the office by 5:00 p.m. Friday, August 4, 2006.

35. Plaintiff was reassigned to an office with no chair. This was another attempt by Defendant to embarrass, harass, intimidate and retaliate against Plaintiff.

36. Plaintiff was the first black to hold the position of Seed Program Director. Plaintiff's position was awarded to a less qualified white following Plaintiff's reassignment. Plaintiff's position was reorganized and placed under Benny Hitch, program director for Agriculture Compliance. Plaintiff was discriminated against based on his race.

11

37.    On or about September 27, 2006, Plaintiff filed a racial discrimination and retaliation charge against Mr. Ron Sparks and Alabama Department of Agriculture and Industries with the Equal Employment Opportunity Commission (EEOC).

38.    On or about November 14, 2006, Plaintiff was summoned to Deputy Commissioner Ronnie Murphy's (Plaintiff's new supervisor) office for a meeting. Upon arrival at the meeting, Plaintiff was informed that the purpose of this meeting was to discuss a supervisor referral for an employee assistance program for Plaintiff. Plaintiff was told that the referral was mandatory and that he had to contact the Behavioral Health System Care Coordinator by December 5, 2006, to schedule an appointment to see a psychiatrist. This was another instance of Defendant harassing and retaliating against Plaintiff due to Plaintiff participating in statutorily protected activity.

39.    On or about May 3, 2007, Plaintiff filed another charge of racial discrimination and retaliation as a result of the November 14, 2006, meeting with Ronnie Murphy and Mr. Murphy's failure to complete his annual evaluation by the April 30th deadline.

40.    On or about May 18, 2007, Mr. Jerome Gray (Executive Assistant) requested a meeting with Plaintiff to allegedly discuss Plaintiff's annual evaluation.  Mr. Gray wanted to know if Plaintiff would be willing to drop the May 3, 2007, E.E.O.C charges. Plaintiff informed

12

Mr. Gray that he was not willing to drop the charges. This was yet another attempt by the Defendant to harass and retaliate against Plaintiff for participating in statutorily protected activity.

41. The Plaintiff is of the belief and provides evidence that he has been discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended based on race and in retaliation to his complaint of the discriminatory treatment of blacks in the workplace and with A.S.E.A. and the EEOC.

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

42. Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-one above, the same as if more fully set herein, and further alleges anew.

43. In taking the above described actions, Defendant intentionally discriminated against Plaintiff on April 30, 2003, April 2005 and July 2006, on the basis of his race.

44. As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and current and future career opportunities. Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

13

## COUNT TWO

## RETALIATION

45.     Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-four above, the same as if more fully set herein, and further alleges anew.

46.     In taking the above described actions, Defendant retaliated against Plaintiff, when he filed a complaint with the State Employee Association in June 2006, and EEOC complaints against Defendant.

47.     As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

48.     As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant the following:

a.      Assume jurisdiction over this action;

b.      A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation;

c.      All back-pay and fringe benefits as a result of the discrimination and retaliation, with interest;

d.      Attorney's fees;

14

e.   Costs;

f.   Prejudgment interest;

g.   An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

h.   Punitive damages.

### Jury Demand

Plaintiff demands trial by jury on each and every cause of action.

Respectfully submitted,

Juraldine Battle-Hodge (BAT033)

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

OF COUNSEL

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

JOHN L. CRAYTON,

      Plaintiff,

v.

ALABAMA DEPARTMENT OF
AGRICULTURE & INDUSTRIES,

      Defendant.

)
)
)
)
)
)
)
)
)
)

Case No. 2:07cv626MEF

RECEIVED

2007 DEC 31 A 10: 10

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## MOTION FOR LEAVE TO AMEND COMPLAINT

**COMES NOW** the Plaintiff, John L. Crayton and moves this Court for leave to amend his Complaint. As grounds for said motion, Plaintiff represents unto this Court as follows:

1. The Plaintiff, John L. Crayton, filed his initial Complaint on July 9, 2007.

2. The Plaintiff discovered that certain allegations in his Complaint were not ripe.

3. That as a result, Plaintiff files his Amended Complaint to correct the allegations.

4. That per the applicable Scheduling Order in this case, the Plaintiff is allowed to amend his Complaint on or before January 8, 2008.

5. That an Amended Complaint will not cause undue prejudice or delay proceedings.

Respectfully submitted,

Juraldine Battle-Hodge (BAT033)
Attorney for the Plaintiff
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104

## CERTIFICATE OF SERVICE

We, hereby certify that, on the 21st day of December 2007, the foregoing document was served upon the following counsel of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

**Hon. E. Ham Wilson, Jr.**
**Hon. Emily C. Marks**
**Ball, Ball, Mathews & Novak, P.A.**
**P.O. Box 2148**
**Montgomery, Alabama 36102-2148**

OF COUNSEL:

_____
Juraldine Battle-Hodge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
RE**(NORTHE**RN DIVISION

JOHN L. CRAYTON,                    2007 DEC 21  A 10: 0

     **Plaintiff,**                 DEBRA P. HACKETT, CLK
                       U.S. DISTRICT COURT
**v.**                              MIDDLE DISTRICT ALA          **Case No. 2:07cv626 MEF**
                                    )
**ALABAMA DEPARTMENT OF**          )
**AGRICULTURE & INDUSTRIES,**      )
                                    )
     **Defendant.**                 )

## AMENDED COMPLAINT

     **COMES NOW** John L. Crayton (Plaintiff), and amends his complaint against Alabama Department of Agriculture & Industries and its agents and representatives (Defendant) hereby complains as set forth herein below.

### JURISDICTION

1.     This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C., Section 2000e and Retaliation.

2.     Plaintiff has fulfilled all conditions precedent to the institution of this action.

### VENUE

3.     Defendant is located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under

1

42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b) and Retaliation.

## PARTIES

4.  Plaintiff John L. Crayton, hereinafter referred to as "Plaintiff," is an African-American male resident of the United States, residing in Montgomery County, Alabama. Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto. Plaintiff is a member of the protected class for race within the meaning of Title VII. Plaintiff is also an employee of Defendant within the meaning of Title VII.

5.  Defendant, Alabama Department of Agriculture & Industries, hereinafter referred to as "Department" is a state agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## NATURE OF THE CASE

6.  This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant. Plaintiff has been adversely affected by discrimination involving promotion, compensation, assignments, retaliation and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race. The

2

practices committed and continuing to be committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

### FACTUAL BACKGROUND

7.  Plaintiff first began working for Defendant on or about May 19, 1976.

8.  From January 2002 to July 2006, Plaintiff was constantly harassed and discriminated in every aspect of his duties as Seed Program Director by Ronnie Murphy, Lance Hester, Doug Rigney and Ron Sparks.

9.  As the State Seed Program Director Plaintiff's job was to enforce the Truth in Labeling Law as it relates to the seed industry.

10.  Plaintiff's regulatory and administrative duties were gradually being taken away and given to Agriculture Compliance in violation of State codes.

11.  On or about April 2002, Ronnie Murphy met briefly with Plaintiff and the laboratory staff to inquire about the backlog of samples and why it was taking so long getting the test results to the clients.  Mr. Murphy was informed that these problems were occurring, because of severe staff shortage due to attrition, and every request to hire needed staff being denied.

12.  On or about May 2002, the three Seed Analyst and Plaintiff volunteered to work two to three hours after regular work hours to

3

catch up the backlog of samples, which took five months to accomplish. Plaintiff was not recognized for the tremendous and unselfish sacrifice.

13. On or about September 2002, Ronnie Murphy asked Donny Walker to query the Seed Program data base to further scrutinize Plaintiff's work, looking for faults and criticisms. Not only did the staff and Plaintiff keep up with the workload, the query revealed that they had established a record turn around time on the test results.

14. On or about April 30, 2003, Plaintiff applied for the position of Division Director, and was ranked number 4 out of 8. The two individuals ranked 2 and 3 did not have a master's degree, which Plaintiff did, or the years of experience that Plaintiff had. The position was awarded to Lester Hester. Mr. Hester was less qualified than Plaintiff. Plaintiff was discriminated against when he was denied this promotion based on his race.

15. On or about October 4, 2004, Plaintiff was summoned to the commissioner's office at about 3:45 p.m. Upon arrival, the secretary requested that Plaintiff have a seat because, Mr. Sparks wasn't ready to see him. After a fifteen to twenty minute wait, Plaintiff was finally ushered into the commissioner's office. Unaware of the purpose or reason for being summoned, Plaintiff was a bit startled as he entered the office and saw several people sitting around a conference table. In attendance were Ron Sparks, Doug Rigney,

Ronnie Murphy, Lance Hester, David Hooks, B.J. Russell and Dana Wallace. Mr. Sparks asked Plaintiff to take a seat and the commissioner informed Plaintiff that he was summoned to his office for the purpose of issuing him a letter of reprimand for failing to perform his job properly.

16.    Plaintiff was asked if he had anything to say in his defense. As one can imagine, after having been blind sided in such an underhanded way, Plaintiff was at a lost for words. Plaintiff informed him that the work was being done in as orderly and timely manner as possible under the circumstances.   Plaintiff was being harassed by Mr. Sparks.

17.    On or about October 7, 2004, Mr. Sparks sent a letter to Alabama Seed Industry and to Plaintiff's counterparts, both state and federal, informing them that he was taking over the day to day operations of Alabama's program and that any communication with the seed laboratory was to be directed explicitly to him, Doug Rigney, or Lance Hester.   This was another step in usurping Plaintiff's responsibilities and authority.

18.    In or around April 2005, the Governor sent out a mandate that all unnecessary vehicles were to be taken from employees.   The Defendant removed vehicles from its program directors and other management employees.   The vehicles were eventually redistributed.   However, Plaintiff and no other blacks were given

their cars back.  However, after persistent requests, George
Parrish, black employee, was eventually given his vehicle back.
Some of the similarly situated whites were Benny Hitch and Lance
Hester.  Plaintiff was discriminated against based on his race.

19.    During June of 2006, Plaintiff complained to the Alabama State
Employees Association (A.S.E.A.) that he, as well as other Blacks
was being subjected to unlawful employment discrimination
because of their race due to disparate treatment with cars,
promotions and other matters.

20.    Immediately after the Plaintiff complained to the A.S.E.A., the
Defendant began retaliating against Plaintiff.

21.    On or about June 29, 2006, Plaintiff returned from lunch and parked
on the north side of the building next to the coliseum parking lot. As
Plaintiff walked across the parking lot toward the covered walkway,
Plaintiff noticed Jimmy Holley getting out of the passenger side of
the Commissioner's vehicle. As Plaintiff approached the vehicle,
Plaintiff noticed Mr. Sparks getting out of the driver's side. (This
parking space is next to and to the right of the entrance to the
covered walkway.) As Plaintiff walked pass the two gentlemen
(within two feet) Plaintiff spoke, "How are you all doing? " They did
not respond. Plaintiff proceeded toward the building. Approximately
four to five paces beyond them, Plaintiff heard Mr. Sparks yell, but
the voice tone and quality was not that of a salutation. As Plaintiff

continued up the walkway, Mr. Sparks said, "John, I said hi." Plaintiff stopped, turned around to face them as they were walking toward him. Plaintiff replied, "I spoke to you all, did you not hear me speak to you?" By that time Mr. Holley and Mr. Sparks had caught up to Plaintiff on the walkway. Mr. Sparks in a loud voice yelled, "I was just trying to be nice to you, I don't understand why you are so rude and hateful toward me." Plaintiff's reply to him was, "commissioner, I spoke to you and you spoke to me, so let's just let it be at that."

22.    At that point, Plaintiff was still a step or two ahead of the two of them, and near the door to the lobby of the auditorium. As Plaintiff opened the door and stepped inside, Mr. Sparks made a remark that Plaintiff viewed as sarcastic, derogatory and harassing, "You people or you all," Plaintiff turned to look Mr. Sparks in the face; to indicate that he was aware of the derogatory nature of his remark and that it was not appreciated. Mr. Sparks and Plaintiff were face to face at this point. As Mr. Sparks stepped in side the door he made the statement "John are you threatening me? I'll have your ass arrested." Plaintiff's reply was, "Commissioner, do what you have to do." Plaintiff then turned around and proceeded up a set of steps to a card activated security door to avoid any further confrontation with the two of them.

23.   As Plaintiff gained access to the secured area, Mr. Sparks yelled, "John, I want to see you in my office in 10 minutes!" Mr. Sparks immediately changed that from 10 minutes to "right now!" Plaintiff's reply was that he needed to go to his office to contact his A.S.E.A. representative. Mr. Sparks repeated his last statement and Plaintiff complied with his demand.

24.   Plaintiff followed Mr. Sparks and Mr. Holley into Mr. Sparks' office and sat in a chair in front of Mr. Sparks' desk. Plaintiff summoned Jeff Webb, an attorney for the department, to his office. Mr. Webb came in and took a seat next to Plaintiff. Mr. Sparks proceeded to tell Mr. Webb his version of the incident that had just taken place between he and Plaintiff. Without hearing Plaintiff's view, Mr. Webb's comment was "we can't have that in the workplace." Plaintiff was dismissed and Plaintiff went to his office and called the A.S.E.A. office and gave his version of the incident to Mr. Norbert Williams, attorney for A.S.E.A. Plaintiff was constantly being harassed by Mr. Sparks.

25.   On or about July 2006, Plaintiff was reassigned from his position of seed director to a recently created position of Genetically Modified Plant and Products Director.

26.   On or about July 31, 2006, at around 9:45 a.m., Ray Hilburn (Plaintiff's supervisor) came to Plaintiff's office and informed Plaintiff that he, Ronnie Murphy and Doug Rigney wanted to meet

8

with him in the upstairs board room at 10:30 a.m. Plaintiff arrived for the meeting at 10:25. No one was in the room. Around 10:40, Mr. Murphy came in for a few minutes and left. Around 10:50, Mr. Murphy returned to the room followed by Mr. Hilburn five minutes later. Mr. Murphy informed the group that Mr. Rigney would not be attending the meeting.

27.     Mr. Murphy informed Plaintiff as to why he was summoned to this meeting. Mr. Hilburn gave Plaintiff a letter. The letter stated that Plaintiff's duties and immediate supervisor were being changed. It should be noted that this letter was not signed. Plaintiff was also given a Form 40 to sign. Plaintiff felt that he was being targeted for disparate treatment and continued discrimination and harassment because of his participation in statutorily protected activity.

28.     Plaintiff expressed his lack of interest in this newly created position. Plaintiff had grave reservations and misgivings regarding this position. Defendant claimed that the state so badly needed this position, yet didn't see the need to publicly announce the job so as to have a larger selection of applicants to choose from. Additionally, there were other concerns.  Plaintiff was especially concerned with the continual attempts by this administration to harass him, force him in a position to fail, leave or to retire.  Plaintiff felt threatened that if he did not take this position he would be fired.

29.     After voicing his position and concerns, Mr. Murphy attempted to convince Plaintiff of the importance of this program. Mr. Murphy further stated that Plaintiff was the only person in the Department qualified to handle these duties. Mr. Murphy further stated that the change in duties would be a lateral transfer without an increase in salary. Plaintiff's response to this was that if this program is so important, why wasn't announced so that other qualified applicants could apply. Normally statewide jobs are competitive.  The transfer was actually a constructive demotion in retaliation for Plaintiff participating in statutorily protected activity.

30.     At approximately 4:25 p.m., on this same day, Mr. Murphy came to Plaintiff's office. Plaintiff was on the phone, Mr. Murphy left and returned about fifteen minutes later. Plaintiff was still busy with phone calls. At 4:55 Plaintiff was finally finished with his phone calls when Mr. Murphy came back to Plaintiff's office to tell him that the Commissioner wanted to see Mr. Murphy and Plaintiff in his office. Plaintiff informed Mr. Murphy that he had a 5:15 appointment.

31.     Plaintiff left and returned with Mr. Sparks about five minutes later. Mr. Sparks informed Plaintiff that he wanted to talk with him about this very important program that was so badly needed in Alabama. He stated that Monsanto and Syngena thinks that there is a great need for such a program. Plaintiff repeated his concerns, reservations and lack of interest in the new position.

10

32.   Plaintiff further stated that his counterparts (State Seed Control Officials) in other states have "Genetic Engineering" as it relates to the seed industry as part of their regular duties. Plaintiff stated that he would gladly accept the added responsibilities as they relate to seed only, but he wanted to keep his position as State Seed Program Director. Mr. Sparks denied Plaintiff's request.

33.   Mr. Sparks said among other things that he desired that Plaintiff take the job, if not "We will have to part company." Once again, Plaintiff was being harassed, threatened and retaliated against.

34.   On or about August 1, 2006, at about 11:45, Mr. Murphy came to Plaintiff's office and informed him that Plaintiff was to cease and desist all of his activities and duties as the State Seed Program Director immediately and vacate the office by 5:00 p.m. Friday, August 4, 2006.

35.   Plaintiff was reassigned to an office with no chair. This was another attempt by Defendant to embarrass, harass, intimidate and retaliate against Plaintiff.

36.   Plaintiff was the first black to hold the position of Seed Program Director. Plaintiff's position was awarded to a less qualified white following Plaintiff's reassignment. Plaintiff's position was reorganized and placed under Benny Hitch, program director for Agriculture Compliance. Plaintiff was discriminated against based on his race.

11

37.    On or about September 27, 2006, Plaintiff filed a racial discrimination and retaliation charge against Mr. Ron Sparks and Alabama Department of Agriculture and Industries with the Equal Employment Opportunity Commission (EEOC).

38.    The Plaintiff is of the belief and provides evidence that he has been discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended based on race and in retaliation to his complaint of the discriminatory treatment of blacks in the workplace and with A.S.E.A..

## COUNT ONE

### RACE DISCRIMINATION – TITLE VII

39.    Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-one above, the same as if more fully set herein, and further alleges anew.

40.    In taking the above described actions, Defendant intentionally discriminated against Plaintiff on April 30, 2003, April 2005 and July 2006, on the basis of his race.

41.    As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and current and future career opportunities.    Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

12

## COUNT TWO

## RETALIATION

42.    Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-four above, the same as if more fully set herein, and further alleges anew.

43.    In taking the above described actions, Defendant retaliated against Plaintiff, when he filed a complaint with the State Employee Association in June 2006, against Defendant.

44.    As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

45.    As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Honorable Court grant the following:

a.    Assume jurisdiction over this action;

b.    A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation;

c.    All back-pay and fringe benefits as a result of the discrimination and retaliation, with interest;

d.    Attorney's fees;

13

e.   Costs;

f.   Prejudgment interest;

g.   An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

h.   Punitive damages.

Respectfully submitted,

_____
Juraldine Battle-Hodge (BAT033)
Attorney for the Plaintiff
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104

## CERTIFICATE OF SERVICE

      We, hereby certify that, on the 21st day of December 2007, the foregoing document was served upon the following counsel of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

**Hon. E. Ham Wilson, Jr.**
**Hon. Emily C. Marks**
**Ball, Ball, Mathews & Novak, P.A.**
**P.O. Box 2148**
**Montgomery, Alabama 36102-2148**

OF COUNSEL:

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN L. CRAYTON                    )
                                   )
        Plaintiff,                 )
v.                                 )          CASE NO. 2:07-cv-626-MEF
                                   )
ALABAMA DEPARTMENT OF              )
AGRICULTURE & INDUSTRIES,          )
                                   )
        Defendant.                 )

# **O R D E R**

Upon consideration of the plaintiff's Motion for leave to Amend Complaint (Doc. #10)

filed on December 21, 2007, it is hereby

ORDERED that the motion is GRANTED.

DONE this the 3rd day of January, 2008.


                              /s/ Mark E. Fuller
                    CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN L. CRAYTON,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    Case No. 2:07cv626 MEF
                                    )
ALABAMA DEPARTMENT OF               )
AGRICULTURE & INDUSTRIES,           )
                                    )
        Defendant.                  )

## AMENDED COMPLAINT

**COMES NOW** John L. Crayton (Plaintiff), and amends his complaint against Alabama Department of Agriculture & Industries and its agents and representatives (Defendant) hereby complains as set forth herein below.

### JURISDICTION

1.     This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C., Section 2000e and Retaliation.

2.     Plaintiff has fulfilled all conditions precedent to the institution of this action.

### VENUE

3.     Defendant is located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under

1

42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b) and Retaliation.

## PARTIES

4.    Plaintiff John L. Crayton, hereinafter referred to as "Plaintiff," is an African-American male resident of the United States, residing in Montgomery County, Alabama.  Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto.  Plaintiff is a member of the protected class for race within the meaning of Title VII.  Plaintiff is also an employee of Defendant within the meaning of Title VII.

5.    Defendant, Ala bama Department of Agriculture & Industries, hereinafter referred to as "Department" is a state agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.


## NATURE OF THE CASE

6.    This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant.  Plaintiff has been adversely affected by discrimination involving promotion, compensation, assignments, retaliation and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race.  The

2

practices committed and continuing to be committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

## FACTUAL BACKGROUND

7.      Plaintiff first began working for Defendant on or about May 19, 1976.

8.      From January 2002 to July 2006, Plaintiff was constantly harassed and discriminated in every aspect of his duties as Seed Program Director by Ronnie Murphy, Lance Hester, Doug Rigney and Ron Sparks.

9.      As the State Seed Program Director Plaintiff's job was to enforce the Truth in Labeling Law as it relates to the seed industry.

10.      Plaintiff's regulatory and administrative duties were gradually being taken away and given to Agriculture Compliance in violation of State codes.

11.      On or about April 2002, Ronnie Murphy met briefly with Plaintiff and the laboratory staff to inquire about the backlog of samples and why it was taking so long getting the test results to the clients. Mr. Murphy was informed that these problems were occurring, because of severe staff shortage due to attrition, and every request to hire needed staff being denied.

12.      On or about May 2002, the three Seed Analyst and Plaintiff volunteered to work two to three hours after regular work hours to

catch up the backlog of samples, which took five months to accomplish. Plaintiff was not recognized for the tremendous and unselfish sacrifice.

13. On or about September 2002, Ronnie Murphy asked Donny Walker to query the Seed Program data base to further scrutinize Plaintiff's work, looking for faults and criticisms. Not only did the staff and Plaintiff keep up with the workload, the query revealed that they had established a record turn around time on the test results.

14. On or about April 30, 2003, Plaintiff applied for the position of Division Director, and was ranked number 4 out of 8. The two individuals ranked 2 and 3 did not have a master's degree, which Plaintiff did, or the years of experience that Plaintiff had. The position was awarded to Lester Hester. Mr. Hester was less qualified than Plaintiff. Plaintiff was discriminated against when he was denied this promotion based on his race.

15. On or about October 4, 2004, Plaintiff was summoned to the commissioner's office at about 3:45 p.m. Upon arrival, the secretary requested that Plaintiff have a seat because, Mr. Sparks wasn't ready to see him. After a fifteen to twenty minute wait, Plaintiff was finally ushered into the commissioner's office. Unaware of the purpose or reason for being summoned, Plaintiff was a bit startled as he entered the office and saw several people sitting around a conference table. In attendance were Ron Sparks, Doug Rigney,

Ronnie Murphy, Lance Hester, David Hooks, B.J. Russell and Dana Wallace. Mr. Sparks asked Plaintiff to take a seat and the commissioner informed Plaintiff that he was summoned to his office for the purpose of issuing him a letter of reprimand for failing to perform his job properly.

16.     Plaintiff was asked if he had anything to say in his defense. As one can imagine, after having been blind sided in such an underhanded way, Plaintiff was at a lost for words. Plaintiff informed him that the work was being done in as orderly and timely manner as possible under the circumstances.   Plaintiff was being harassed by Mr. Sparks.

17.     On or about October 7, 2004, Mr. Sparks sent a letter to Alabama Seed Industry and to Plaintiff's counterparts, both state and federal, informing them that he was taking over the day to day operations of Alabama's program and that any communication with the seed laboratory was to be directed explicitly to him, Doug Rigney, or Lance Hester.   This was another step in usurping Plaintiff's responsibilities and authority.

18.     In or around April 2005, the Governor sent out a mandate that all unnecessary vehicles were to be taken from employees.   The Defendant removed vehicles from its program directors and other management employees.   The vehicles were eventually redistributed.   However, Plaintiff and no other blacks were given

their cars back.    However, after persistent requests, George
Parrish, black employee, was eventually given his vehicle back.
Some of the similarly situated whites were Benny Hitch and Lance
Hester.  Plaintiff was discriminated against based on his race.

19.    During June of 2006, Plaintiff complained to the Alabama State
Employees Association (A.S.E.A.) that he, as well as other Blacks
was being subjected to unlawful employment discrimination
because of their race due to disparate treatment with cars,
promotions and other matters.

20.    Immediately after the Plaintiff complained to the A.S.E.A., the
Defendant began retaliating against Plaintiff.

21.    On or about June 29, 2006, Plaintiff returned from lunch and parked
on the north side of the building next to the coliseum parking lot. As
Plaintiff walked across the parking lot toward the covered walkway,
Plaintiff noticed Jimmy Holley getting out of the passenger side of
the Commissioner's vehicle. As Plaintiff approached the vehicle,
Plaintiff noticed Mr. Sparks getting out of the driver's side. (This
parking space is next to and to the right of the entrance to the
covered walkway.) As Plaintiff walked pass the two gentlemen
(within two feet) Plaintiff spoke, "How are you all doing? " They did
not respond. Plaintiff proceeded toward the building. Approximately
four to five paces beyond them, Plaintiff heard Mr. Sparks yell, but
the voice tone and quality was not that of a salutation. As Plaintiff

continued up the walkway, Mr. Sparks said, "John, I said hi." Plaintiff stopped, turned around to face them as they were walking toward him. Plaintiff replied, "I spoke to you all, did you not hear me speak to you?" By that time Mr. Holley and Mr. Sparks had caught up to Plaintiff on the walkway. Mr. Sparks in a loud voice yelled, "I was just trying to be nice to you, I don't understand why you are so rude and hateful toward me." Plaintiff's reply to him was, "commissioner, I spoke to you and you spoke to me, so let's just let it be at that."

22.    At that point, Plaintiff was still a step or two ahead of the two of them, and near the door to the lobby of the auditorium. As Plaintiff opened the door and stepped inside, Mr. Sparks made a remark that Plaintiff viewed as sarcastic, derogatory and harassing, "You people or you all," Plaintiff turned to look Mr. Sparks in the face; to indicate that he was aware of the derogatory nature of his remark and that it was not appreciated. Mr. Sparks and Plaintiff were face to face at this point. As Mr. Sparks stepped in side the door he made the statement "John are you threatening me? I'll have your ass arrested." Plaintiff's reply was, "Commissioner, do what you have to do." Plaintiff then turned around and proceeded up a set of steps to a card activated security door to avoid any further confrontation with the two of them.

23.    As Plaintiff gained access to the secured area, Mr. Sparks yelled, "John, I want to see you in my office in 10 minutes!" Mr. Sparks immediately changed that from 10 minutes to "right now!" Plaintiff's reply was that he needed to go to his office to contact his A.S.E.A. representative. Mr. Sparks repeated his last statement and Plaintiff complied with his demand.

24.    Plaintiff followed Mr. Sparks and Mr. Holley into Mr. Sparks' office and sat in a chair in front of Mr. Sparks' desk. Plaintiff summoned Jeff Webb, an attorney for the department, to his office. Mr. Webb came in and took a seat next to Plaintiff. Mr. Sparks proceeded to tell Mr. Webb his version of the incident that had just taken place between he and Plaintiff. Without hearing Plaintiff's view, Mr. Webb's comment was "we can't have that in the workplace." Plaintiff was dismissed and Plaintiff went to his office and called the A.S.E.A. office and gave his version of the incident to Mr. Norbert Williams, attorney for A.S.E.A. Plaintiff was constantly being harassed by Mr. Sparks.

25.    On or about July 2006, Plaintiff was reassigned from his position of seed director to a recently created position of Genetically Modified Plant and Products Director.

26.    On or about July 31, 2006, at around 9:45 a.m., Ray Hilburn (Plaintiff's supervisor) came to Plaintiff's office and informed Plaintiff that he, Ronnie Murphy and Doug Rigney wanted to meet

8

with him in the upstairs board room at 10:30 a.m. Plaintiff arrived for the meeting at 10:25. No one was in the room. Around 10:40, Mr. Murphy came in for a few minutes and left. Around 10:50, Mr. Murphy returned to the room followed by Mr. Hilburn five minutes later. Mr. Murphy informed the group that Mr. Rigney would not be attending the meeting.

27.     Mr. Murphy informed Plaintiff as to why he was summoned to this meeting. Mr. Hilburn gave Plaintiff a letter. The letter stated that Plaintiff's duties and immediate supervisor were being changed. It should be noted that this letter was not signed. Plaintiff was also given a Form 40 to sign. Plaintiff felt that he was being targeted for disparate treatment and continued discrimination and harassment because of his participation in statutorily protected activity.

28.     Plaintiff expressed his lack of interest in this newly created position. Plaintiff had grave reservations and misgivings regarding this position. Defendant claimed that the state so badly needed this position, yet didn't see the need to publicly announce the job so as to have a larger selection of applicants to choose from. Additionally, there were other concerns. Plaintiff was especially concerned with the continual attempts by this administration to harass him, force him in a position to fail, leave or to retire. Plaintiff felt threatened that if he did not take this position he would be fired.

29.     After voicing his position and concerns, Mr. Murphy attempted to
        convince Plaintiff of the importance of this program. Mr. Murphy
        further stated that Plaintiff was the only person in the Department
        qualified to handle these duties. Mr. Murphy further stated that the
        change in duties would be a lateral transfer without an increase in
        salary. Plaintiff's response to this was that if this program is so
        important, why wasn't announced so that other qualified applicants
        could apply. Normally statewide jobs are competitive.   The transfer
        was actually a constructive demotion in retaliation for Plaintiff
        participating in statutorily protected activity.

30.     At approximately 4:25 p.m., on this same day, Mr. Murphy came to
        Plaintiff's office. Plaintiff was on the phone, Mr. Murphy left and
        returned about fifteen minutes later. Plaintiff was still busy with
        phone calls. At 4:55 Plaintiff was finally finished with his phone calls
        when Mr. Murphy came back to Plaintiff's office to tell him that the
        Commissioner wanted to see Mr. Murphy and Plaintiff in his office.
        Plaintiff informed Mr. Murphy that he had a 5:15 appointment.

31.     Plaintiff left and returned with Mr. Sparks about five minutes later.
        Mr. Sparks informed Plaintiff that he wanted to talk with him about
        this very important program that was so badly needed in Alabama.
        He stated that Monsanto and Syngena thinks that there is a great
        need for such a program. Plaintiff repeated his concerns,
        reservations and lack of interest in the new position.

32.   Plaintiff further stated that his counterparts (State Seed Control Officials) in other states have "Genetic Engineering" as it relates to the seed industry as part of their regular duties.   Plaintiff stated that he would gladly accept the added responsibilities as they relate to seed only, but he wanted to keep his position as State Seed Program Director.  Mr. Sparks denied Plaintiff's request.

33.   Mr. Sparks said among other things that he desired that Plaintiff take the job, if not "We will have to part company." Once again, Plaintiff was being harassed, threatened and retaliated against.

34.   On or about August 1, 2006, at about 11:45, Mr. Murphy came to Plaintiff's office and informed him that Plaintiff was to cease and desist all of his activities and duties as the State Seed Program Director immediately and vacate the office by 5:00 p.m. Friday, August 4, 2006.

35.   Plaintiff was reassigned to an office with no chair.   This was another attempt by Defendant to embarrass, harass, intimidate and retaliate against Plaintiff.

36.   Plaintiff was the first black to hold the position of Seed Program Director.  Plaintiff's position was awarded to a less qualified white following Plaintiff's reassignment.   Plaintiff's position was reorganized and placed under Benny Hitch, program director for Agriculture Compliance.   Plaintiff was discriminated against based on his race.

11

37.    On or about September 27, 2006, Plaintiff filed a racial discrimination and retaliation charge against Mr. Ron Sparks and Alabama Department of Agriculture and Industries with the Equal Employment Opportunity Commission (EEOC).

38.    The Plaintiff is of the belief and provides evidence that he has been discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended based on race and in retaliation to his complaint of the discriminatory treatment of blacks in the workplace and with A.S.E.A..

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

39.    Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-one above, the same as if more fully set herein, and further alleges anew.

40.    In taking the above described actions, Defendant intentionally discriminated against Plaintiff on April 30, 2003, April 2005 and July 2006, on the basis of his race.

41.    As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and current and future career opportunities.  Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

## COUNT TWO

## RETALIATION

42.     Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-four above, the same as if more fully set herein, and further alleges anew.

43.     In taking the above described actions, Defendant retaliated against Plaintiff, when he filed a complaint with the State Employee Association in June 2006, against Defendant.

44.     As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

45.     As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant the following:

a.     Assume jurisdiction over this action;

b.     A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation;

c.     All back-pay and fringe benefits as a result of the discrimination and retaliation, with interest;

d.     Attorney's fees;

13

e.    Costs;

f.    Prejudgment interest;

g.    An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

h.    Punitive damages.

Respectfully submitted,


Juraldine Battle-Hodge (BAT033)
Attorney for the Plaintiff
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104

## CERTIFICATE OF SERVICE

We, hereby certify that, on the 17th day of March 2008, the foregoing document was served upon the following counsel of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

**Hon. E. Ham Wilson, Jr.**
**Hon. Emily C. Marks**
**Ball, Ball, Mathews & Novak, P.A.**
**P.O. Box 2148**
**Montgomery, Alabama 36102-2148**

_____
OF COUNSEL